LANDRY, Judge.
This is an appeal from a judgment dismissing and rejecting the demand of defendant-wife for permanent alimony upon the granting of a final divorce to plaintiff-husband more than a year and sixty days following rendition of judgment of separation a mensa et thoro previously granted appellant.
In the court below judgment was rendered January 24, 1962, in favor of plaintiff-husband (said date being the day of trial of his action) decreeing an absolute divorce between the parties litigant. At this same time the trial court took under advisement defendant’s reconventional demand for permanent alimony pending filing of briefs and continued in effect, until further orders of the court, alimony pendente lite in the sum of $270.00 awarded appellant in the prior action for judicial separation.
The sole question presented by the instant appeal is whether appellant-wife is entitled to alimony pursuant to LSA-C.C. Article 160 (permanent alimony).
The provisions of Article 160 LSA-C.C. are clearly distinguishable from those of LSA-C.C. Article 148 (which latter authority provides for alimony pendente lite) in two important aspects which the jurisprudence has recognized and followed on numerous previous occasions. In order to more graphically portray the distinctions referred to, the Articles in question are herewith quoted in full as follows:
“Art. 148. If the wife has not a sufficient income for her maintenance pending the suit for separation from bed and board or for divorce, the judge shall allow her, whether she appears as plaintiff or defendant, a sum for her support, proportioned to her needs and to the means of her husband.” (Emphasis supplied by the Court)
“Art. 160. If the wife who has obtained the divorce has not sufficient means for her maintenance, the Court may allow her in its discretion, out of the property and earnings of her husband, alimony which shall not exceed one-third of his income; provided, however, that in cases where, under the laws of this State a divorce is granted solely on the ground that the married persons have been living separate and apart for a certain specified period of time, and the husband has obtained a divorce upon the ground of such living separate and apart, and the wife has not been at fault, then the Court may allow the wife in its discretion, out of the property and earnings of her husband, alimony which shall not exceed one-third of his income.
“This alimony shall be revocable in case it should become unnecessary, and in case the wife should contract a second marriage.” (Emphasis supplied by the Court)
*77 It will be readily observed the cited articles differ in that the former is mandatory in its terms while the latter is permissive inasmuch as its provisions are made applicable in the discretion of the court. Secondly, Article 148 expressly provides alimony is due the wife who is without “sufficient income for her maintenance”, the amount thereof being “proportioned to her needs and to the means of her husband.” Under this article the wife is clearly entitled to support from her husband if her income is insufficient to provide for her needs. The rationale of Article 148 has been held to be judicial enforcement of the husband’s obligation to support the wife during the existence of the marriage. Smith v. Smith, 217 La. 646, 47 So.2d 32. On the other hand, however, Article 160 allows alimony only if the wife has not “means for her maintenance”. From its inception, Article 160 has been interpreted as providing the wife a mere gratuity or pension considering the husband is under no obligation to support his former wife subsequent to dissolution of the marriage. State ex rel. Hill v. Judge of Civil District Court, 114 La. 44, 38 So. 14. See also discussion of this subject in Sachse v. Sachse, La.App., 150 So.2d 772, recently rendered by this Court.
Following rendition of judgment of separation a mensa et thoro between the present litigants, the parties effected a settlement of the community of acquets and gains previously existing between them. In said settlement appellant wife received assets in the aggragate of $20,000, consisting of $13,-000 cash; a promissory note in the sum of $6,000 payable by her former husband two years after date, bearing 5% interest; one half of the household furniture; and a 1957 DeSoto automobile.
Appellant is approximately 50 years of age and is unable to engage in any type of work because of a nervous condition which the parties agree renders her incapable of gainful employment. According to appellant, since receiving the funds and property aforesaid, she has spent a considerable portion thereof. She stated she expended $2,-800.00 in payment of certain debts incurred prior to the settlement and the sum of $2,-150.00 for living expenses over and above the $270.00 per month she received as alimony pendente lite. In addition, she used $1,500.00 of her funds to repay a loan. Of the cash sum received in the settlement, appellant acknowledged she had $6,995.00 remaining and also conceded she still held appellee’s unmatured note in the sum of $6,000.00 making a total of $12,995.00.
In addition to the aforesaid sums expended since receipt of her share of the community, appellant testified she is still indebted to her sister in the sum of $1,-000.00 for clothing and is also obligated to one brother for plane fare from California to Louisiana, and to another brother in the sum of $550.00 for funds advanced for her support.
According to appellant her living expenses approximates $480.00 monthly which she itemized, inter alia, as follows: Food $80.00; apartment rental $127.00; Clothing $100.00; and Medical $55.00.
Commenting upon appellant’s living expenses, our learned brother below very aptly remarked:
“Under our jurisprudence the alimony now owed to the defendant is in the nature of a pension and is not what is required to support her in the manner in which she was accustomed, but only what will provide her with sufficient means for her maintenance. By ‘maintenance’ as used in Article 160 is meant primarily food, shelter, and clothing. See Fortier v. Gelpi, 195 La. 449, 197 So. 138; Smith v. Smith [217 La. 646, 47 So.2d 32]; Wilmot v. Wilmot, 223 La. 221, 65 So.2d 321; Brown v. Harris [225 La. 320, 72 So.2d 746]; and Rabun v. Rabun [232 La. 1004, 95 So.2d 635].”
In urging our reversal of the judgment rendered below, learned counsel for ap *78 pellant relies strongly upon the ruling in Loe v. Loe, La.App., 131 So.2d 106; Roberts v. Roberts, La.App., 145 So.2d 669 and Shapiro v. Shapiro, La.App., 141 So.2d 448, which hold, in essence, a wife is not required to deplete her assets before being eligible for permanent alimony. On the other hand, appellee maintains, on authority of Brown v. Harris, 225 La. 320, 72 So.2d 746; Rabun v. Rabun, 232 La. 1004, 95 So.2d 635; Smith v. Smith, 217 La. 646, 47 So.2d 32; and Fortier v. Gelpi, 195 La. 449, 197 So. 138, appellant is possessed of sufficient means for her maintenance and is not entitled to an award for permanent alimony.
We believe the Supreme Court’s explanation of the jurisprudence applicable to cases of this nature, as stated in Smith v. Smith, 217 La. 646, 47 So.2d 32, so fully and clearly sets forth the issues involved, we quote therefrom extensively as follows:
“Article 148 has for its purpose the enforcement of the husband’s obligation of support of his wife as it exists under Article 120 of the Civil Code, which continues during the pendency of a suit for separation from bed and board or for divorce and does not terminate until the marriage is dissolved either by death or by divorce. While the suit is going on the obligation still exists and, whether the wife is the one who is suing or is being sued, if she has not a sufficient income for her maintenance, the judge shall allow her a sum for her support, the amount to be gauged according to what her needs are and what are the means of her husband. It is to be noted here that both her needs and the means of the husband are to be taken into consideration in determining the sum to be allowed.
“On the other hand, Article 160 merely makes some provision for the maintenance of the wife who has obtained the divorce, after the marriage has been, terminated and the obligation of support by the husband under Article 120 of the Code no longer exists. But it is only in the event that she has not sufficient means for her maintenance that the Court may, in its discretion, allow her out of the property and earnings of the husband, a sum not to exceed one-third of his income, and this alimony is revocable in case it becomes unnecessary, and in case the wife should contract a second marriage.
“The alimony contemplated by this Article has frequently been construed as a pension; not a voluntary payment, but an amount fixed by the Court in its discretion, to be paid out of the property of the husband, and arising out of the needs of the wife. If her circumstances change or if the need no longer exists the amount of the pension becomes subject to change or it need no longer be allowed. To this effect, see Player v. Player, supra [162 La. 229, 110 So. 332], Fortier v. Gelpi, 195 La. 449, 197 So. 138; Slagle v. Slagle, 205 La. 694, 17 So.2d 923.
“Thus we see that Article 148 takes into consideration the sufficiency of the income which the wife may have for her maintenance during the pendency of the suit for separation or divorce, in determining whether the husband should be made to pay her additionally for her support proportioned to her needs and his means. Article 160 makes no reference to the wife’s income and takes into consideration only her means of maintenance and whether they are sufficient or not. In other words, under Article 160, the Court is not concerned with the wife’s income as such but only with the means she has, including income, and whether they are sufficient for her maintenance. If they are not, then it may, in its discretion, allow her this so-called pension and in doing so may look into the property and earnings of the husband in fixing the amount, which, however, *79 cannot exceed one-third of his income. It becomes necessary, therefore, to consider what is meant by the phrase ‘sufficient means for her maintenance’ in Article 160. Does it mean that the wife must be left with no means at all before she can claim alimony out of the property and earnings of the husband from whom she is divorced? In several cases in which Article 160 was under consideration, this Court has used the words ‘necessitous circumstances’ almost synonymously with the words ‘sufficient means’, comparing the status of the wife with that of the widow in necessitous circumstances under Articles 2382 and 3252 of the Civil Code. It is not to be inferred from this that the wife must be practically destitute before she can act. In fact the language of Article 160 implies the opposite because it expressly stipulates that it is in case she has not sufficient means that she can apply for the alimony from which it follows that she may have some means.
“In this case, assuming that the wife has an income of say, $35.00 a month from whatever capital investments she may have, it may well be that that would not be sufficient means for her maintenance considering her station in life. However, under our appreciation of the law as embodied in Article 160 of the Code and as distinguished from the provisions of Article 148, in determining her means of maintenance, her income is not the sole thing to be taken into consideration. The Court has to look to all of her ‘means’ in determining whether or not they are sufficient.
“This then poses the direct question that is presented in the case, ‘Can a wife, who is in possession of property and assets valued at $20,000 be said to be without sufficient means for her maintenance?’ Regardless of the station in life which she occupies, we say that obviously she is not. Maintenance may be said to include primarily food, shelter and clothing, and certainly property or means amounting to $20,000 ought to provide those necessities very readily. How far she should go in depleting her capital presents another question. Whilst we do not think that she should be made to use it all, on the other hand, we do not believe that the law intends that she can maintain it intact. In this case, what capital the wife has was derived from the partition of the community of acquets and gains formerly existing between her and her divorced husband and were she permitted to retain hers and at the same time cause her husband to deplete his, in order to pay her alimony, that would produce a result which would be highly inequitable and a situation by which he could be forced into the obligation of supporting her when that obligation no longer exists by reason of the dissolution of the marriage. To what extent the wife should be made to use up her capital before applying for the alimony is a matter with which we are not concerned at this moment. If the time should come when she has reason to believe that she has not a sufficient amount left for her maintenance, she has the right to apply to the Court for alimony in a sum sufficient for that purpose. That would again become a question of fact left to the discretion of the trial judge for decision.”
In view of the foregoing, the question posed herein is simply whether under the circumstances shown, appellant has sufficient means for her maintenance. Stated otherwise, the issue is whether possession of assets in the aggregate of $13,-000.00 constitutes sufficient means for appellant’s maintenance, it being understood “maintenance” contemplates primarily food, clothing and shelter.
In Rabun v. Rabun, the former wiffi received a community settlement of a net *80 value approximating $11,000.00 in addition to household furnishing and an automobile. She was employed at a net salary of $125.00 monthly. The Supreme Court reversed the judgment of the trial court awarding alimony.
The wife was found to have sufficient means and was denied alimony in Brown v. Harris, 225 La. 320, 72 So.2d 746, on a showing she possessed funds in the sum of $6,600.00 left from a community settlement of $7,315.00 and was employed earning $150.00 monthly.
Learned counsel for appellant argues the instant case is distinguishable from the Rabun and Brown cases, supra, because in the cited authorities the wife was employed whereas in the case at bar it is conceded appellant is unable to accept employment because of circumstances beyond her control. The distinction urged by esteemed counsel for appellant is admittedly accurate insofar as it goes but it ignores completely the difference between alimony pen-dente lite and permanent alimony as clearly set forth in the hereinabove quoted language from Smith v. Smith, supra. We are not here concerned with the wife’s income or the husband’s obligation to maintain her in the status to which she was accustomed during the marriage, but rather whether she has “means for her maintenance”, maintenance consisting primarily of food, clothing and shelter.
Admittedly Roberts v. Roberts (La.App. Fourth Circuit) 145 So.2d 669 and Calloway v. Calloway (La.App. Second Circuit) 139 So.2d 55, indicate what we interpret to be a liberal trend, nevertheless, we are aware of two factors which must herein be borne in mind. Firstly, in our judgment, the Supreme Court has not exhibited the slightest inclination to relax or change the rule announced in Fortier v. Gelpi, supra, Smith v. Smith, supra, and other authorities on the subject matter under consideration. Secondly, we note that in the Roberts and Calloway cases the appellate courts, in awarding permanent alimony, affirmed judgments” of the trial courts. We further note the Calloway case recognizes considerable discretion is vested in trial courts in such matters and also declares the exercise of such discretion is not to be disturbed except in case of manifest error.
Shapiro v. Shapiro, La.App., 141 So.2d 448, relied upon by astute counsel for appellant is clearly without application to the instant matter. Our perusal of the cited authority discloses it dealt with a wife’s application for alimony pendente lite pursuant to LSA-C.C. Article 148.
Nor do we consider Loe v. Loe, La.App., 131 So.2d 106 decisive of the issue herein presented as so confidently urged by esteemed counsel for appellant. In the Loe case, it appears the husband’s plea for reduction of permanent alimony was largely predicated upon alleged “changed conditions”. In this regard the court found, however, the only change was that the wife had converted certain real property into cash. The court therein very properly held such a change did not constitute a change of the nature and character upon which to predicate a claim for reduction of alimony.
In the opinion of this court possession of assets in the sum of approximately $13,000.00 consisting of cash in the sum of $6995.00 and an interest bearing note in the amount of $6,000.00 constitutes sufficient means for a wife’s maintenance within the meaning and intendment of Article 160 LSA-C.C. Under the circumstances shown we believe the learned trial court did not abuse the discretion it possesses in such matters. As was aptly stated in the Smith and Brown cases, supra, it is unnecessary that we at this time determine the extent to which appellant must expend' and deplete her assets before she could be adjudicated without means for her maintenance. If in the future she does not have sufficient means for her maintenance, she has recourse to the courts considering the settled jurisprudence a judgment award *81 ing or refusing alimony is subject to modification, change or adjustment when justified by changes occurring in the circumstances involving the parties. Brown v. Harris, 225 La. 320, 72 So.2d 746.
For the reasons hereinabove set forth, the judgment of the lower court is affirmed.
Affirmed.