YARRUT, Judge.
Plaintiff obtained a judgment of divorce from Defendant after a voluntary separation of two years. In a subsequent rule for permanent alimony his wife was awarded $200.00 per month. In addition, the husband was ordered to pay a $95.00 monthly installment on the mortgage note against the community home in which the wife resides with the proviso that, when the community is partitioned, the alimony would be increased to $250.00 per month because Plaintiff’s obligation to pay the mortgage would have terminated. Plaintiff has appealed, contending his wife failed to prove she is in necessitous circumstances under LSA-C.C. Art. 160.
*27 The wife’s assets, totalling, $30,911.50, according to her own conservative estimate, are as follows:
Savings & Loan Association Account $8,000.00
Wife’s interest in equity of community home 5,250.00
Stock 6,161.50
Real Estate-530 Avenue C, Bogalusa, La. 4,500.00
Real Estate-534 Avenue C, Bogalusa, La. 7,000.00
From these assets she derives the following income annually:
Gross rents on both Bogalusa houses $1,740.00
Interest on Savings Account, at least 380.00
Stock Dividend (Based on 1967 payment) 766.99
Gross income from Assets $2,886.99
Thus the wife has a monthly income of $240.58. While the evidence itemizes expenses the wife incurs in maintaining her rental property, it is unnecessary to discuss them in reaching a conclusion.
A wife is entitled to permanent alimony under LSA-C.C. Art. 160, which provides :
“When the wife has not been at fault, and she has not sufficient means for her support, the court may allow her, out of the property and earnings of the husband, alimony which shall not exceed one-third of his income when:
‡ * * >fc ‡ Jj:
“2. The husband obtains a divorce on the ground that he and his wife have been living separate and apart, * *
Alimony allowed under this Article is in the nature of a pension or gratuity. Smith v. Smith, 217 La. 646, 47 So.2d 32. Before a wife is entitled to permanent alimony, she is required to establish that she has insufficient means to support or maintain herself. “Maintenance” primarily means food, clothing and shelter, and not living at a standard to which she had been accustomed during the marriage. Rabun v. Rabun, 232 La. 1004, 95 So.2d 635; Vicknair v. Vicknair, 237 La. 1032, 112 So.2d 702; Fruehan v. Fruehan, La.App., 153 So.2d 75.
Here the wife has more than $30,000.00, yielding her approximately $200.00 net per month, which she contends is insufficient to maintain her. Thus she takes the position that income is the only factor to consider in determining whether her means are sufficient. If she is required to use her capital to live, she contends she would eventually deplete all sources of income.
In fixing permanent alimony, the extent of the wife’s means are measured by her capital and/or income. In awarding pendente lite alimony, the wife’s income is a prime factor in setting the amount.
The distinction between alimony pen-dente lite and permanent alimony, and the obligations from which they stem, was clearly set forth as follows, in Smith v. Smith, supra, viz:
“Article 148 has for its purpose the enforcement of the husband’s obligation of support of his wife as it exists under Article 120 of the Civil Code, which continues during the pendency of a suit for separation from bed and board or for divorce and does not terminate until the marriage is dissolved either by death or by divorce. While the suit is going on the obligation still exists and, whether the wife is the one who is suing or is being sued, if she has not a sufficient income for her maintenance, the judge shall allow her a sum for her support, the amount to be gauged according to what her needs are and what are the means of her husband. It is to be noted here that both her needs and the means of the husband are to be taken into consideration in determining the sum to be allowed.
*28 “On the other hand, Article 160 merely makes some provision for the maintenance of the wife who has obtained the divorce, after the marriage has been terminated and the obligation of support by the husband under Article 120 of the Code no longer exists. But it is only in the event that she has not sufficient means for her maintenance that the Court may, in its discretion, allow her out of the property and earnings of the husband, a sum not to exceed one-third of his income, and this alimony is revocable in case it becomes unnecessary, and in case the wife should contract a second marriage.
“The alimony contemplated by this Article has frequently been construed as a pension; not a voluntary payment, but an amount fixed by the Court in its discretion, to be paid out of the property of the husband, and arising out of the needs of the wife. If her circumstances change or if the need no longer exists the amount of the pension becomes subject to change or it need no longer be allowed. To this effect, see Player v. Player, supra [162 La. 229, 110 So. 332], Fortier v. Gelpi, 195 La. 449, 197 So. 138; Slagle v. Slagle, 205 La. 694, 17 So.2d 923.
“Thus we see that Article 148 takes into consideration the sufficiency of the income which the wife may have for her maintenance during the pendency of the suit for separation or divorce, in determining whether the husband should be made to pay her additionally for her support proportioned to her needs and his means. Article 160 makes no reference to the wife’s income and takes into consideration only her means of maintenance and whether they are sufficient or not. In other words, under Article 160, the Court is not concerned with the wife’s income as such but only with the means she has, including income, and whether they are sufficient for her maintenance. If they are not, then it may, in its discretion, allow her this so-called pension and in doing so may look into the property and earnings of the husband in fixing the amount, which, however, cannot exceed one-third of his income. It becomes necessary, therefore, to consider what is meant by the phrase ‘sufficient means for her maintenance’ in Article 160. Does it mean that the wife must be left with no means at all before she can claim alimony out of the property and earnings of the husband from whom she is divorced? In several cases in which Article 160 was under consideration, this Court has used the words ‘necessitous circumstances’ almost synonymously with the words ‘sufficient means’, comparing the status of the wife with that of the widow in necessitous circumstances under Articles 2382 and 3252 of the Civil Code. It is not to be inferred from this that the wife must be practically destitute before she can act. In fact the language of Article 160 implies the opposite because it expressly stipulates that it is in case she has not sufficient means that she can apply for the alimony from which it follows that she may have some means.”
Under the Smith case, a wife may apply for permanent alimony before she is completely destitute. How far she must deplete her capital before she is deemed to have insufficient means is not clear. There are numerous cases wherein the wife’s application for permanent alimony was rejected, and in each instance she had less capital and/or income than the wife in the case before us.
In Smith v. Smith, supra, alimony was denied a wife having more than $20,000.00 in capital. Her income was $35.00 per month.
In Brown v. Harris, 225 La. 320, 72 So.2d 746, alimony was refused to a wife who had approximately $14,000.00 in assets that yielded an income of $16.50 per month. In addition, she earned a salary of $150.00.
In Fruehan v. Fruehan, supra, a wife, 50 years old and unable to work because of illness, was denied alimony based on a de *29 termination that $15,000.00 of capital assets were sufficient means for her maintenance.
In Rabun v. Rabun, supra, a wife with net assets of $11,000.00 and a monthly income of $125.00 was held to have sufficient means for her maintenance, thus not entitled to permanent alimony.
And in Hardy v. Hardy, La.App., 214 So.2d 231, this Court applied the above rule in holding a wife was required to liquidate her equity in insurance policies before she could demand alimony.
In the instant case the capital assets and income of the wife exceed those of the wives in the cases cited above. Accordingly, it would be inconsistent with the above jurisprudence for us to uphold the award of alimony made by the District Court.
Therefore, the judgment awarding alimony to Mrs. Rena Leavines is annulled without prejudice, however, to her right to apply for alimony in the future if her circumstances require its payment.
Appellee is to pay all costs for the rule to fix alimony in the Trial Court and for this appeal.
Judgment annulled.